### DAVE WARD v. THE STATE.

#### No. 418. Decided February 9, 1910.

#### Rehearing denied April 13, 1910.

1.—Murder—Charge of Court—Manslaughter.

Where, upon trial for murder, the evidence showed that there was nothing which occurred at the time of the shooting on which to base a charge of manslaughter, and that if defendant's statement was to be believed, self-defense was the only issue raised, there was no error in the court's failure to charge on manslaughter.

**2.—Same—Defense of Property—Charge of Court—Manslaughter.**

Where, upon trial of murder, the evidence showed that on the morning of the day of the homicide the deceased shot two dogs belonging to the defendant, and that the trouble grew out of this circumstance, but the shooting did not take place until the afternoon, there was no error in the court's failure to charge on manslaughter. An offense against one's property even if wrongful, does not raise the issue of manslaughter unless there are other circumstances in evidence raising this issue.

**3.—Same—Charge of Court—Words and Phrases—Self-Defense.**

Where, upon trial of murder, the court in his charge on self-defense used the phrase "great bodily harm" instead of "serious bodily injury," but the charge as a whole could not possibly have misled the jury by this language, there was no error.

**4.—Same—Charge of Court—Provoking Difficulty.**

Where, upon trial of murder, there was evidence strongly tending to show that it was not the defendant's purpose in calling upon deceased, merely to demand an explanation touching the killing of his dogs, etc., and the court charged the jury that if the defendant called upon the deceased for an explanation and not to provoke a difficulty, to acquit him. There was no error.

**5.—Same—Verbal Instruction to Jury—Practice in District Court.**

Where, upon trial of murder, the court after delivering his written instructions to the jury, gave them a verbal admonition as to how they must conduct themselves as jurors in the trial of the case, in which among other things he told them that, to be guilty of disobedience or violation of his instructions might cause a reversal of the case, there was no error.

**6.—Same—Continuance—Bill of Exceptions.**

Where, upon appeal from a conviction of murder, there was no bill of exceptions reserved to the court's action in overruling a motion for a continuance, the same could not be considered.

**7.—Same—Sufficiency of the Evidence.**

Where, upon appeal from a conviction of murder in the second degree, the same was sustained by the evidence, the verdict will not be disturbed.

Appeal from the District Court of Freestone. Tried below before the Hon. H. B. Daviss.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*R. L. Williford,* for appellant.—Upon question of manslaughter in the defense of one's property where it may not justify the taking of human life but afford adequate cause: Milrainey v. State, 33 Texas Crim. Rep., 577, 28 S. W. Rep., 537; Roch v. State, 52 Texas Crim. Rep., 48, 105 S. W. Rep., 202.

On question of abusive language as adequate cause: Lienpo v. State, 28 Texas Crim. App., 179, 12 S. W. Rep., 588; Rice v. State, 51 Texas Crim. Rep., 255, 103 S. W. Rep., 1156.

On question as to what constitutes adequate cause: Williams v. State, 15 Texas Crim. App., 617; Childers v. State, 33 Texas Crim. Rep., 509, 27 S. W. Rep., 133.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Freestone County on February 7 of last year charged with the murder of one R. J. Sloat. On February 29 thereafter on .trial he was found guilty of murder in the second degree and his punishment assessed at confinement in the penitentiary for a period of five years.

1. The error first assigned, and, as we gather from the record, most relied upon for reversal was the failure of the court to submit the issue of manslaughter to the jury. A proper decision of this question demands that we shall make at least a brief statement of the facts. The deceased was a veterinary surgeon, living in the town of Teague, and was, to some extent, engaged in raising chickens, having a well prepared place, including an incubator. Appellant was a barkeeper for one Riggs, who owned a saloon in Teague. Early on the morning of the day of the killing deceased shot two dogs belonging to appellant, of which appellant was promptly informed and at which he became greatly enraged and was apparently in great distress of mind. The record further shows that warrants were sworn out against Sloat for shooting the dogs and he was arrested. On that day appellant took advice as to whether or not the prosecution would bar his right to recover damages for the value of his dogs. By at least one witness, threats were proved as having been made by deceased against appellant which were communicated to appellant. The killing occurred in the afternoon about 2 o'clock. The immediate facts were that the deceased was in a furniture store in Teague when appellant appeared in the doorway and accosted deceased with the statement, "Pay me $300 for my dogs." One Ponce, who sought to interfere, was, according to his testimony, threatened by appellant with being shot, and he was accordingly compelled to desist. According to the testimony of several of the witnesses deceased had up one or both of his hands and uttered no words towards appellant except, "Don't do that," and when he was doing nothing and making no demonstration he was twice shot by appellant. Appellant's statement is to the effect in substance that he was unable to give a very accurate statement of just what he did do, but his testimony raises the issue and tends to establish the fact that deceased had moved behind a table on which were some rugs, and that these rugs were piled high enough so that only deceased's breast was visible, and at and just before the time he shot deceased had his left hand up and his right hand down and out of sight and was, as appellant believed, in the act of making an attack on him when appellant fired. There was nothing occurring at the time of the shooting on which to base a charge of manslaughter. If appellant's statement is to be believed, self-defense was raised and the issue was sharply drawn as to whether the homicide was justifiable or not. An offense against one's property, even if wrongful, does not raise the issue of manslaughter unless there are other circumstances in evidence raising this issue.

2. Complaint is made of the use of the words "great bodily harm"

in the 20th paragraph of the court's charge. This paragraph should be construed in connection with the one preceding it. These two paragraphs are in the following language: "The defendant is permitted by law to defend himself against any unlawful attack, reasonably threatening injury to his person, and is justified in using all necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicated to be necessary. Homicide is justified by law when committed in defense of one's person against any unlawful and violent attack, made in such a manner as to produce a reasonable expectation or fear of death or some serious bodily injury."

"A reasonable apprehension of death or great bodily harm will excuse the defendant in using all necessary force to protect his life or person. And it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension or appearance of danger, as it appeared to the defendant from his standpoint at the time. In such case the defendant, acting under such real or apparent danger, is in no event bound to retreat in order to avoid the necessity of killing his assailant, but is justified in killing him." It will be observed that in the first paragraph of the charge quoted above, the words "or serious bodily injury" are used; whereas, in the last paragraph the court uses the expression "or great bodily harm." We think that when construed all together that the meaning of the two terms are identical and that no jury could possibly have been misled by the use of the language complained of. It is always, of course, preferable and the better practice to use the precise terms of the statute, but where these words are once used and thereafter there is a mere, slight departure from the literal words of the statute, but the obvious equivalent of the same are used by the court, we think we would be without excuse in reversing a case for the mere fact that the literal words were not employed where their manifest equivalent was used.

3. Counsel complain that the court erred in the 24th paragraph of his charge wherein the jury are instructed that if they believe that appellant upon learning that his dogs had been shot, armed himself and went to the deceased for the purpose of peaceably demanding of him an explanation of his conduct and settlement for his dogs and not for the purpose of provoking a difficulty, etc. It should be noticed and remembered that the complaint of this charge is in this language: "This is error; it is a charge on a condition not existing in the case; there was no evidence, direct, circumstantial or remote, that the defendant went to where Sloat was with any intention of provoking a difficulty; but all the testimony was to the effect that the defendant neither wanted nor desired a difficulty, nor does the court charge law applicable to one who does provoke a difficulty." The entire paragraph of the charge complained of is as follows: "Now, if you believe that the defendant Dave Ward, upon learning that his dogs had

been shot, armed himself and went to the deceased for the purpose of peaceably demanding of him an explanation of his conduct and settlement for his dogs, and not for the purpose of provoking a difficulty with deceased, and that in the interview between the parties a difficulty arose in the course of which in his necessary or supposed self-defense against what appeared to him to be an unlawful attack upon his person, the defendant shot and killed the deceased, you will acquit him." The obvious intent and purpose of the court in giving this paragraph was to break the force in appellant's favor of his having gone to where deceased was, and to inform the jury that if his purpose in going there was to ask an explanation concerning his dogs that this would not in any sense impair his right of self-defense, but that he would not be justified in going to where deceased was for the purpose of provoking a difficulty. We think in the respect complained of, at least, the charge of the court is not erroneous. There is, we believe, some evidence in the record tending strongly to show that it was not appellant's purpose in calling upon deceased merely to demand an explanation touching his dogs. The evidence shows that as he went across the street and approached the building where deceased was, a friend of his intercepted him and endeavored to persuade him from so doing, but that he, appellant, declined to be intercepted or interfered with, in great anger and under circumstances strongly justifying the belief that he had a far different purpose in going to the store than merely to demand an explanation concerning his dogs, and this view is strengthened, if we may look to what was said and done when he reached the store. We are, therefore, not prepared to hold that there was error in the charge of the court in the respect complained of.

4. Again, complaint is made of the following verbal instruction, or remark, made by the court to the jury: "To be guilty of disobedience or violation of these instructions might cause a reversal of the case." This was excepted to on the ground that it involved the expression of an opinion by the court that appellant was guilty and was a charge on the weight of the evidence. In explaining this bill the court states that it was a part of a long and general statement by the court to the jury which he makes a part of the bill. This statement is as follows: "Gentlemen of the jury, when you are chosen as a juror to try a criminal case the law sets you apart for that distinct work, and contemplates and requires that you shall give your entire time and attention to that work. When you are chosen as a juror in a case of this character you are an official of this court, and have a duty to perform which is just as important as mine. You are prevented from having any general business transaction during the time you are on the jury, of course, if you have some business on hand which demands immediate attention you can go and attend to it in the presence of the sheriff. If you desire to send any message home to your family, you will have to let the sheriff talk for you; you are not permitted to talk to your wife over the telephone, but must let the sheriff talk for you.

You must keep yourself separate and apart from everybody else except the sheriff. The law requires that you go in a body. The law requires that I give you these instructions and requires that you observe them. To be guilty of disobedience or violation of these instructions might cause a reversal of the case. I am sure you will not do it if you will think a moment. You will not discuss this case with anyone or among yourselves. Don't let the case be discussed in your presence by anybody, and if anybody persists in discussing it near you or in your presence, or to you, it will be your duty to report it to the sheriff, and it will be his duty to stop it. And if he can't stop it, just report it to me, and I will. I don't know how comfortable your quarters will be, but I trust the sheriff will make it as comfortable for you as he possibly can, and I hope you will be satisfied. The law imposes a certain amount of jury service upon everyone, and if things are not as comfortable as you would like, don't blame the sheriff, for he is only doing his duty as required by law. And another thing, I request that you do not take intoxicating liquors while you are on the jury; I don't know that any of you do, but I request that you do not. Don't come in the courtroom under the influence of liquor. Gentlemen, you will be in the court-room at 9 o'clock in the morning. I thank you in advance for strict obedience to the instructions given you." We think that considered all together the instructions given by the court to the jury were entirely appropriate, and, indeed, to be commended, and that it is scarcely conceivable that any man fit to sit on a jury would or could have understood from anything contained in this statement that the court meant to express any opinion in reference to the case.

5. Complaint is made in the motion for a new trial in respect to the action of the court in overruling the application for a continuance. This motion is not in the record, nor is the action of the court touching same preserved by a bill of exception and therefore can not be considered.

6. Finally, it is urged that the verdict of the jury is contrary to the law and the evidence in that the undisputed evidence shows that if guilty at all, appellant was not guilty of any higher grade of offense than manslaughter. It is our opinion that manslaughter is not in the case. The only testimony raising the issue of self-defense was that of appellant. In the light of the entire record we can not accede to the suggestion that the verdict of the jury is not sustained by the evidence.

Finding no error in the proceedings of the court below, the judgment of conviction is hereby in all things affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.

[Rehearing denied April 13, 1910.—Reporter.]